Wright, J.,
delivered the opinion of the court:
The claimant, having been appointed by the President, July 11, 1880, a cadet in the Military Academy, served as such until July 21, 1883, when he was summarily dismissed by order of the President, upon charges of maltreating a new cadet while the latter was performing guard duty, personat-ing an officer of the guard, improper use of the countersign, and disobedience to orders. Subsequent to his dismissal a successor was appointed to the place so vacated, who after-wards graduated from the academy, and was later, by and with the advice and consent of the Senate, appointed a second lieutenant in the Army, and this suit is brought to obtain the decree of this court, declaring the order of dismissal null and void, and for a judgment against the United States for $3,417, the pay of a cadet from July 27, 1883, to July 1, 1889.
The question presented for our decision is whether the President may summarily so dismiss a cadet without first *352 obtaining the sentence of a court-martial under the provisions of the statutes, Articles of War, and Army Regulations, by which the military establishment of the United States is governed.
The contention of the claimant is that the provisions of sections 1229 and 1342 of the Revised Statutes are a limitation upon the powers of the President in such cases, wherein it is enacted, in effect, that no officer shall in time of peace be dismissed from service except upon and in pursuance of the sentence of a court-martial. By article 99, section 1342, above referred to, it is declared that the word “officer,” as used by the legislative department, shall be understood to designate commissioned officers; the word “soldier” shall be understood to include noncommissioned officers, musicians, artificers and privates, and other enlisted men, and the convictions mentioned therein shall be understood to be convictions bjr courts-martial.
We are referred to Babbitt v. The United States (16 C. Cls. R., 202) as establishing the status of a cadet to be that of an uncommissioned officer, and from that it is argued that the cadet therefore, being an officer, falls within the prohibition of dismissal without the sentence of a court-martial. The effect, however, of that decision, carried to its logical sequence, would result in the conclusion that a cadet is not an officer within the meaning of the legislation referred to, because he is uncommissioned. The decision in the case of Morton v. United States (19 C. Cls. R., 200) is also referred to, to sustain the insistence that the term of a cadet is to be considered as part of the service in the Army in determining the right of an officer to longevity pay; but there the nature of the duties of a cadet was distinctly differentiated from that of ordinary soldiers. That a cadet is in some kind of service — has duties to perform under orders of superiors — is not to be questioned by anyone who knows anything about the work, physical and mental, that he has to do and the character of military author-itj’ and discipline to which he is subject. No private soldier is more in service than a cadet, though the character of the two services are quite different. The statute (sec. 1322) prescribes the rig'hts and duties of cadets; They shall be arranged *353 into companies according to the directions of the Superintendent, each of which shall be commanded by an officer of the Army, for the purpose of military instruction. To each company shall be added four musicians. The coi’ps shall be taught and trained in all duties of a ¡private soldier, noncom-missioned officer, and officer; shall be encamped at least three months in each jmar, and shall be taught and trained in all duties incident to a regular camp, and (sec. 1323) shall be subject at all times to do duty in such places and. on such service as the President may direct.
It therefore seems plain to us, by reference to the statutory provisions above recited, what the rights and duties of a cadet consist of, and the nature of the same, consisting merely in such as are included in and incident to military instruction, drill, and discipline, and training in such as appertain to the duties of a private soldier, noncommissioned officer, and officer. It is true they are subject at all times to duty in such places and such service as the President may direct, but, following the general rule by which statutes are construed, this general power of the President to assign to duty in such places and services as he may direct would be controlled by the previous specific description of the nature of such duties and services, and such duties would therefore fall in the specific class of those relating to instruction, drill, and discipline. It is not, therefore, believed the President, under that section of the statute, would assume to assign duty to cadets requiring them to participate in actual war, although, by virtue of the powers given by the Constitution to the Commander in Chief, he has repeatedly assigned cadets, both Army and Navy, to active military operations beyond the confines of the academy.
Hence, if our reasoning is sound (and upon this point we feel assured) the rights and duties of a cadet are not the same as those of privates, noncommissioned officers, and officers, but at the same time the cadets are serving in the Army and are part of the regular establishment, and may, we think, be described as candidates merely for commissioned officers, and therefore do not fall within the prohibition of the statute forbidding dismissal in times of peace unless in conformity with the sentence of a court-martial. These appointments are made *354 by the President, without the advice and consent of the Senate, and it seems to us plain that Congress did not intend by any legislation that has been enacted to withhold from him the power of summary dismissal for the good of the Academy, for such a power can wisely be left to his discretion. In truth, when sections .1325 and 1326 of the Revised Statutes are considered together, it would seem that the intention of Congress was to reserve the power of summary dismissal to some one in authority. And who more properly and wisely than the President could administer such authority ? Ity section 1325 it is provided that no cadet who is reported as deficient in either conduct or studies, and recommended to be discharged from the Academy shall, unless upon recommendation of the academic board, be returned or appointed to any place in the Army-before his class shall have left the Academy and received their commissions. It is clear from the record here that claimant was deficient in conduct, for which he was dismissed, and, as we think, in conformity to the law we have recited. By the other section of the statute above numbered the Superintendent of the Academy is given power to convene general courts-martial for the trial of cadets and to execute the sentences of such courts, except sentences of suspension and dis-mission; and the latter exception we think is reserved for the President, who is not limited in his authority by the provision of the section..
Without such power of summary dismissal being vested somewhere in the conduct and management of colleges, and such is the Academy in its nature, we think it within the observation of everyone, the lack of proper discipline and deportment would be the common fault of all, and thereby greatly lessen the value and efficiency of such institutions. We can not believe, therefore, that it was the intention of Congress to withhold from the Executive this most salutary and effective means of enforcing order and discipline, common to all institutions of learning throughout the land.
It follows from the views we have expressed that claimant is not entitled to the relief and judgment that he seeks, and his petition will be dismissed.